# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| | : | |
| KHALIL ALLEN | : | No. 10-620-10 |

## M E M O R A N D U M

**STENGEL, J.**                                                              **July 12, 2012**

Presently before the Court are a number of Defendant Khalil Allen's Pretrial Motions. For the following reasons, Defendant's Motions will be denied.

## I. Background

On September 22, 2010 and September 7, 2011, a federal grand jury returned a seventy-three count indictment and an eighty-nine count superseding indictment, respectively, charging Defendant, Khalil Allen, along with nineteen (19) other Defendants with various crimes occurring on or about October 2001 through approximately October 6, 2010. These criminal acts were committed in and around the Bartram Village Housing Development (BVHD) in Southwest Philadelphia by a criminal enterprise known to law enforcement as the "Harlem Boys." Throughout the course of the investigation, police and federal authorities obtained and executed numerous search and seizure warrants, which led to the recovery of drugs, drug paraphernalia, drug proceeds, firearms, ammunition, fired cartridge casings, documents, photographs, letters and other mail, and other items.

Members of the enterprise committed, attempted, and threatened to commit acts of violence, including murder, assault, and robbery, to protect and expand the enterprise's criminal operations.  The members of the enterprise had varying roles.  The Government alleges that Defendant Allen participated in the "Harlem Boys" as a gunman for the enterprise.  Allen is charged with four (4) counts in the superseding indictment.  These counts include charges of conspiracy to participate in a racketeering enterprise under 18 U.S.C. § 1962(d); conspiracy to distribute under 21 U.S.C. § 846; and distribution of cocaine base ("crack") under 21 U.S.C. § 841(a)(1).  Allen has filed a pre-trial motion, which has been briefed by the parties and argued in a pre-trial motions hearing on May 15-16, 2012, where evidence and testimony were provided by the government and counsel on various motions.  The motion includes arguments for a motion to suppress, motion to exclude prior convictions,[1] motion to compel government to produce 404(b) evidence,[2] motion to exclude hearsay of confidential informant #336,[3] motion for disclosure of confidential informants' identity, and motion to compel discovery and early Jenks material.[4]  (Doc. No. 196).

**II. Motion to Suppress Evidence from October 10, 2006 and December 10, 2009**

On October 10, 2006, Philadelphia Police observed Khalil Allen smoking a "blunt" on the street.  The officers placed Mr. Allen under arrest for smoking a marijuana

---

[1] On July 9, 1998, Allen was arrested and charged with robbery, possession of a firearm and related offenses.  On May 18, 1999, he was found guilty and sentenced to 6 to 12 years imprisonment.

[2] Defendant's motion for discovery of 404(b) evidence is denied for the reasons set forth in the corresponding Order.

[3] Defendant's motion to exclude hearsay of confidential informant #336 is denied for the reasons set forth in the corresponding Order.

[4] Defendant's motion for discovery of Jencks material is denied for the reasons set forth in the corresponding Order.

cigarette. After a pat down, the officers uncovered ten baggies of marijuana as well as empty baggies with apples on them. The Defendant alleges he also made statements prior and subsequent to his arrest, but there has not been any evidence as to what those statements were or when exactly Mr. Allen made them. Counsel asks that these items and statements be suppressed as a result of an unconstitutional search.

On December 10, 2009, officers observed Allen in a black Jeep along with co-Defendant Moten. Allen dropped off Moten on the 5400 block of Bartram Avenue and then made an "aggressive turn" down a street and parked. Officers pulled up next to the car, and Allen rolled down the window, which caused the officers to smell marijuana. When one of the officers asked Allen if he had been "smoking weed," Allen stated, "I just got done." Allen then stepped out of the car upon request and the officers noticed packets of cocaine in the driver's door compartment and a bottle of oxycodone on the dash. Allen then made the second statement he seeks to suppress stating, "I just get high, officer, there should be a straw with that." Allen was then placed under arrest and searched. The search revealed $359 and a cell phone. While in the holding cell, Allen coughed up a small bag of marijuana.

Police can arrest an individual without a warrant if, under the totality of the circumstances, the officer had probable cause to conclude that the person being arrested has committed or is committing an offense." United States v. Laville, 480 F.3d 187, 189 (3d Cir. 2007). "The smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." United States v. Ramos, 443 F3d. 304, 308 (3d Cir. 2006).

The Fourth Amendment does not require that the police obtain a warrant to search a vehicle when there is probable cause to believe the vehicle contains contraband or evidence of criminal activity. Ross v. United States, 456 U.S. 798, 804-09 (1982). Under this exception, "where there [is] probable cause to search a vehicle, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." Maryland v. Dyson, 527 U.S. 465, 467 (1999); Karnes v. Skrutski, 62 F .3d 485, 498 (3d Cir.1995) (quoting United States v. McGlory, 968 F.2d 309, 343 (3d Cir.1992)). Probable cause to conduct a search exists "when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Hodge, 246 F.3d 301, 305 (3d Cir.2001) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Finally, custodial interrogation occurs only after a person has either been taken into custody or had his freedom restricted in some significant way.[5] Oregon v. Mathiason, 429 U.S. 492, 494 (1977); Miranda v. Arizona, 384 U.S. 436, 444 (1966); United States v. Mesa, 638 F.2d 582, 584-85 (3d Cir. 1980). This is a two prong inquiry. First, a defendant must have been in police custody when the statements were made. See, e.g., Yarborough v. Alvarado, 541 U.S. 642, 662-63 (2004) (holding that custody for Miranda purposes is determined by examining the totality of the circumstances surrounding interrogation and determining whether a reasonable person would have felt free to terminate the interrogation and leave). Second, the police must have interrogated the defendant, either through direct questions or even any words or actions that are

---

[5] In contrast, an interaction may be characterized as a mere encounter which need not be supported by any level of suspicion but carries with it no official compulsion to stop or respond. Florida v. Bostick, 501 U.S. 429 (1991).

reasonably likely to elicit an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980).

Allen argues that the September 10, 2006 incident was an unlawful arrest and any statements made and items seized should be suppressed. Allen also requests that all statements and physical evidence from the December 10, 2009 incident be suppressed as an unlawful search without a warrant and without probable cause. Specifically, Allen claims that his first statement, "I just got done," was a product of custodial interrogation and because he was not first advised of the Miranda warnings, was in violation of his constitutional rights. He also claims that his statement, which came on the heels of the discovery of the cocaine and packaging material, "I just get high, officer, there should be a straw with that," should be suppressed. He argues that this second statement is "fruit of the poisonous tree," stemming from the initial Miranda violation.

The Government argues that the arrest made on September 10, 2006, was Constitutional because they saw the marijuana in Allen's possession while he was smoking the "blunt" on the street. They placed him under arrest and during a search incident to his arrest recovered drugs. Regarding the December 10, 2009 incident, the Government argues that this was either a stop based on probable cause that Allen had violated a traffic law or it was simply a mere encounter that escalated to a finding of probable cause when Allen rolled down his window and the officers smelled marijuana.

In both incidents, the officers clearly smelled or saw marijuana on Allen's person. Because the officers had probable cause to arrest Allen for possession of marijuana on September 10, 2006, when they saw him smoking a "blunt," the evidence seized from

5

him subsequent to his arrest was lawful as a search incident to arrest.  Further, Sergeant Davis testified credibly that on December 10, 2009, Allen made a bad turn, which caused him to follow the car until it parked.  After Sergeant Davis pulled up next to Allen, Allen rolled down his window and Sergeant Davis smelled a strong odor of marijuana prompting him to ask whether Allen had been smoking.  I find that, although Sergeant Davis asked Allen a question, it was not a custodial interrogation under Oregon, 429 U.S. 492; and Miranda, 384 U.S. 436.  In contrast, this was a mere encounter, which need not be supported by any level of suspicion but carries with it no official compulsion to stop or respond; the Defendant did not have to lower his window and was free to leave.  Florida v. Bostick, 501 U.S. 429 (1991).

   At the time Allen made the second statement, "I just get high, officer…," it is likely he was not free to leave or had his freedom restricted in some significant way. Mesa, 638 F.2d 582.  However, Allen made this statement without any questioning or comments by the officer.  Thus, the second prong of the inquiry is not met. Innis, 446 U.S. at 301-02.  After smelling the marijuana, the officer was permitted to search the car under the motor vehicle exception. [6]  Maryland v. Dyson, 527 U.S. 465, 467 (1999).  The plain view exception also justified the officers in seizing the packets from the door and the oxycodone.  Horton v. California, 496 U.S. 128, 135 (1990).  Since there was no Miranda violation, the "fruit of the poisonous tree" doctrine is inapplicable. Allen's

---

[6] Officers likely had probable cause to stop the vehicle based on the "aggressive turn" made by Mr. Allen.  United States v. Johnson, 63 F.3d 242, 245(3rd Cir. 1995).  See also Whren v. United States, 517 U.S. 806, 810 (1996) ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

motion to suppress statements and evidence relating to the September 2006 and December 2009 incidents is denied.

### III.  Motion to Exclude Prior Convictions

Khalil Allen seeks to preclude the Government from impeaching him with evidence of his prior convictions in the event he testifies in his own defense at trial. Specifically, Allen was convicted of robbery in 1998.  Rule 609(a)(1) provides that "evidence that an accused has been convicted of a felony shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused."  Further, Rule 609(a)(2) mandates the admission of convictions of dishonesty or false statements.  Although Allen's conviction occurred more than ten years ago, the sentence concluded in 2010, bringing it into the 10 year period under the rule.

In determining whether the probative value of a prior conviction outweighs its prejudicial effect, the Third Circuit has held that the following factors should be considered: (1) the nature of the crime; (2) when the conviction occurred; (3) the importance of the defendant's testimony; and (4) the degree to which the defendant's credibility is central to the case.  See United States v. Greenidge, 495 F.3d 85, 98 (3d Cir. 2007).  These factors weigh in favor of the admission of the evidence of the previous conviction.  For instance, under the fourth factor a robbery conviction is the kind of conviction that courts find to be probative of a defendant's veracity.  See United States v. Patterson, 2009 U.S. Dist. LEXIS 98218, 2009 WL 3423839, at *3 (E.D. Pa. Oct. 21, 2009) ("While robbery does not carry the probative significance of a *crimen falsi*, it is

nonetheless a crime that reflects on an individual's veracity"). See also United States v. Moore, 917 F.2d 215, 235 (6th Cir. 1990) (affirming district court's decision to admit nine-year-old conviction for robbery as impeachment evidence under Rule 609(a)(1) in a case where the defendant was charged with armed robbery because the defendant's prior robbery conviction "went to credibility, and had impeachment value"); United States v. Washington, 746 F.2d 104, 107 (2d Cir. 1984) (affirming trial court's decision to admit evidence of defendant's prior robbery conviction under Rule 609).

Because the conviction is relevant to Allen's credibility and the probative value outweighs the prejudice, it will be admissible against Allen if he takes the stand at trial under 609(a)(1). Additionally, the prejudice that Defendant might face as a result of his prior robbery conviction being admitted can be mitigated by a proper limiting instruction to the jury. See United States v. Millhouse, 2007 U.S. Dist. LEXIS 33406, *10 (E.D. Pa. May 7, 2007) (determining that the court could "eliminate or greatly minimize any potential prejudice" of admitting the defendant's prior robbery conviction "by including a limiting instruction in its charge that restricts the jury's consideration of the evidence to [the defendant's] credibility only").

### IV. Motion to Discover Identity of Confidential Informants

Effective law enforcement and the protection of the public interest require that the government be permitted, absent exigent circumstances, to withhold the identity of informants. See Rovario v. United States, 353 U.S. 53 (1957). Mere speculation that disclosure would be helpful is not sufficient to override the government's privilege. United States v. Brenneman, 455 F.2d 809, 811 (3d Cir.), cert. denied, 408 U.S. 923

8

(1972). Defendant Allen claims that the identities of the confidential informants are "relevant and helpful to the case" as it would allow him to "cross examine them and enable the Court, the jury, and Mr. Allen to learn of, inter alia, the informants' credibility, motives for providing the information, and the nature and quality of the information provided."

Allen has not shown that the informer's identity "is critical to his case," Branzburg v. Hayes, 408 U.S. 665, 698 (1972). Allen requests information, which may be helpful to impeach a witness, but there is no indication that any confidential informants will be called to testify.[7] Further, even if Allen had articulated specific reasons that disclosure was critical and relevant to helping him prove his case, the Government's privilege to protect the identity of its confidential informants is very high, especially in a case with substantial counts of violence. For these reasons, the Defendant's motion is denied.

### V. Conclusion

For the reasons stated above, I will deny the Defendant's Motion to Suppress Evidence, Motion to Exclude Prior Convictions, and Motion to Discover the Identity of Confidential Informants (Doc. No.196).

An appropriate Order follows.

---

[7] If the Government chooses to utilize some of the confidential informants as witnesses in its Case-in-Chief, it shall disclose the identity of the confidential informant as well as any discoverable information to the defendants prior to trial.